# CHARLESTON.

MARY McVEY *v.* THE CHESAPEAKE & POTOMAC TELEPHONE COMPANY OF WEST VIRGINIA

(No. 6235)

Submitted October 30, 1928. Decided November 13, 1928.

*Dozier A. Devane, J. N. Bradley, MacCorkle, Clark & Mac-Corkle, Fitzpatrick, Brown & Davis* and *C. W. Strickling,* for plaintiff in error.

*John Bowman* and *T. W. Peyton,* for defendant in error.

LIVELY, PRESIDENT:

Mary McVey obtained verdict and judgment against defendant Telephone Company for personal injuries received while operating a switchboard as one of its employees in the plant of defendant in the city of Huntington, and defendant comes to this Court, challenging her right to recovery, and prosecuting error.

The declaration sets out the duty of defendant to plaintiff, the violation of that duty, the resultant injury and damage. It charges also that defendant elected to take the benefit of the Workmen's Compensation Act, but did not comply therewith, in that it failed to post or keep posted notices about its place of business to the effect that it had so elected, and did not otherwise notify plaintiff of its election as required by the Compensation Act. Defendant demurred, filed special plea, and then pleaded the general issue. The special plea is that plaintiff is not entitled to sue, because defendant has elected to take the benefit of the Workmen's Compensation Act, and has in all respects conformed thereto, and at and before the injury complained of by plaintiff, had posted and maintained in conspicuous places at its place of business and in the building where plaintiff was employed, printed notices of its election to pay for injuries under the Workmen's Compensation Act.

The errors alleged are failure to exclude, on motion, plaintiff's evidence at the conclusion of her evidence, and failure to exclude all of the evidence at the conclusion of the evidence, and direct a verdict for defendant; and errors in giving and refusing instructions.

Plaintiff was injured on May 9, 1925, at which time defendant's place of business was a three-story brick building

on Tenth Street, in the third floor of which plaintiff worked as telephone operator, together with many others in a large operating room 62 feet and 2 inches by 27 feet six inches, which building constituted what is called the "first unit." It also occupied a two-story brick building contiguous to the first unit and connected therewith by an enclosed passageway, on the second floor of which was an auxiliary operating room. The only way of reaching the operating room on the third floor of the first unit was by a stairway from the second floor with an intermediary landing eight feet five inches wide, and from this landing the stairway went up to the floor of the operating room, the distance being about seven or eight feet to the top of the railing around the stair wall. Plaintiff and her co-employees in the main operating room traveled this stairway three or four times each day. On the end of a toll board on the third floor and facing the landing near where the operators got the "head gear' was placed a printed notice, according to defendant's witnesses, about four feet nine inches above a person of ordinary height, and which notice was formerly on the wall but was placed on the end of the toll board when that space was taken by the toll board, and in such position where it could be best seen from the stairway landing, according to the evidence of many witnesses for defendant. A like notice was posted in the basement, in a rear hallway on the first floor in the frame room, and on a post in the center of the auxiliary operating room in the second unit, as testified to by defendant's witnesses. In all there were at least five notices, one each in the basement, frame room, rear hall, first floor, business office, and at the terminal of the toll board. These notices were all alike and read as follows:

## NOTICE TO EMPLOYEES

Employees are hereby notified that the undersigned has elected to pay directly to injured employees, or dependents, the Compensation and expenses provided in the West Virginia Workmen's Compensation Act. This notice is posted in accordance with the provisions of the Workmen's Compensation Act.

The Chesapeake & Potomac Telephone Co.
of West Virginia, Employer.
January 1, 1917. (Then follow instructions in
case of injury.)

The heading "Notice to employees" was in very large letters and easily read at a distance of 15 or 20 feet. The other parts of the notice were in smaller letters, but could be read at a distance of 4 or 5 feet.

There is a sharp conflict in the evidence as to whether any of these notices were in fact ever posted. Plaintiff and seven of her witnesses were positive that no such notices were posted either on the pillar in the second unit or on the end of the toll board, and about five others testified that they had never observed any notices posted anywhere about the premises, while on the other hand defendant produced the persons who had actually posted the notices, the janitor who kept them clean, and about 25 of the employees who had seen and read the notices. Many of plaintiff's co-workers on the third floor room testify that they saw and read the notice posted on the end of the toll board, and that it had always been there. It rather conclusively appears that the notice on the pillar in the second floor room in the second unit, the auxiliary operating room, was there until a day or so before the first trial when it was taken down to be used as evidence, and a photograph of the pillar shows the space where it was posted, clearly defined, with the screw holes in the plaster corresponding to those in the frame of the notice. The evidence vastly preponderates in favor of defendant on the controversy over the existence and maintenance of notices at the places named. It is shown however that plaintiff and her fellow female operators did not frequent the places where the notices were posted, except the operating room on the third floor of the first unit and the stairway leading thereto; although it appears that she spent about two weeks in the second unit taking a preparatory course before she went to the first unit as an operator. The main controversy is over the question as to whether these notices were posted in *conspicuous* places within the requirement of the Act. We think it is rather conclusively proven that these notices were

actually posted. Plaintiff alleged that defendant had elected to be protected by the Act, but had failed to post and maintain notices in accordance therewith. The burden was on her to prove that allegation, and, as above stated, the preponderance of the evidence is that the notices were actually posted. But whether they were posted in conspicuous places under the terms and design of the Act is another question. Sec. 23 of chap. 15P, Code, (the Compensation Act), says: ''Each employer * * * shall post and keep posted in conspicuous places about his place or places of business typewritten or printed notices stating the fact that he has made such election, and the same when so posted shall constitute sufficient notice to all his employees * * *.'' The purpose of acts of this character is well known. Under the old law the court dockets were congested with suits for damages for personal injuries and deaths by employees against their employers, arising out of and in course of their employment. These cases, often meritorious, went through long litigation subjecting both sides to burdensome expenses and loss of time, and in the end often bringing little return to the employee after payment of costs and fees. Depending upon verdicts for uncertain amounts, justice was often defeated because of the amounts finally received for the injuries, after long litigation. The Act was designed to correct these evils and afford the employee sure and quick relief, as well as to save the industry from grievous burdens. Changed social and economic conditions demanded an improved system of compensation. Under the Act the employer, if he does not elect to take its benefits, is denied his common law defenses of assumption of risk, the fellow servant rule, and contributory negligence; whereas, the employee is debarred of his suit if he continues in the employment after having constructive notice that the Act governs. The employer is not bound to elect, neither is the employee bound to continue services if the former does elect, after notice. Mutual benefits are intended for each where the act applies. Hence, the courts quite generally and properly construe the acts liberally so as to vitalize the beneficient purpose. How then shall the requirement that notices shall be posted and kept posted in

*conspicuous* places about the place or places of business be construed? Liberally or strictly? There is a paucity of judicial decisions on the requirement of constructive notice by means of posted notices. The Texas decisions, notably *Kampmann* v. *Cross,* 194 S. W. 437, cited by plaintiff, are of little value, because the Texas Act required written or printed notices to be given to, all employees. Notice by posting was not recognized. Actual notice was required. In *Daniels* v. *Chas. Bolt Co.,* 78 W. Va. 124, we said that the employee must have actual notice, or by typewritten or printed notices posted in conspicuous places which would constitute sufficient notice to all employees. No such notices were posted in that case, and of course, the question of conspicuousness was not involved. That case is of no value here. In *Rhodes* v. *Coal Company,* 79 W. Va. 71, we held that the evidence was sufficient to show that notices had been posted. The question of their conspicuousness was not raised, for in that case, as in this, plaintiff and his witnesses said they did not see the notices. That case is of value here only insofar as it holds that negative evidence of the witnesses that they did not observe the notices cannot overcome the positive evidence that the notices were actually there. Somewhat pertinent to the question involved here is *De Pasquale* v. *Mason Mfg. Co.,* 39 R. I. 114, 97 Atl. 816, wherein the court held that it was not for the jury to determine whether a posted notice in the English language was a reasonable notice to De Pasquale in as much as the act required the notices to be copies of the notice filed with the Commissioner, which had been done. The Minnesota Act seems to designate where the notices should be posted. Brad. Comp. Law, 3rd ed., p. 283.

The Telephone Company insists that the court erred in not instructing the jury to find a verdict in its favor, on the theory that the evidence clearly established the posting of notices in conspicuous places. As before intimated, a verdict based on want of posting notices alone could not stand, and the court would have been warranted in directing a verdict, if the question of conspicuousness was not involved. It may be true that the notices in the basement, rear hall, frame room and business office were in conspicuous places for

the employees who frequented these places, or whose duties called them there infrequently, but they would not be conspicuous to plaintiff whose duties confined her to the operating room on the third floor and its vicinity. A reasonable requirement, under the act, would call for a notice or notices which would most likely be seen by all of the employees. A plant may cover several acres, and some of the employees may never be called to portions of it. Notices in one part would not be notice to those who never had opportunity to see them, however conspicuously there posted. We think it very clearly established that the notice was posted on the end of the toll board near the stairway to the room where plaintiff worked. Many of the employees and others saw it there and read the pertinent part which was in large printed letters. Those who placed it there and maintained it swore it was always there. But whether that place was a conspicuous one, a place where it was plain to the eye and easily seen, is conflicting, although the evidence seems to preponderate in that regard for defendant; and we cannot say as a conclusion of law that the place was a conspicuous one within the meaning of the statute. Hence, the peremptory instruction was properly refused. And it follows that defendants' instruction No. 4 telling the jury that if they believed the framed notices were kept posted at the places as testified to by defendant's witnesses, then such notices were posted in conspicuous places within the meaning of the Compensation law, was also properly refused. It follows from what has been said that defendant's instruction No. 6 was also properly refused, for it told the jury, in substance, that if they believed as many as two notices were posted at the time of the injury then plaintiff could not recover, even though the jury might believe that the posting of one or more other such notices was not at a conspicuous place or places. The requirement of notices posted and maintained should not be construed so as to unreasonably burden the employer, and thus defeat the purposes of the Act. After having elected to contribute to the support of the fund, it would be anomalous to presume that the employer intended to keep his election secret, and hide his notices so they could not be seen.

A reasonable conspicuousness of the notice should only be required. Still, reasonable notice must be given, for the employee is deprived of his suit at common law for injuries negligently suffered; and by holding the employer to post his notices in the *most* conspicuous places, depending upon what a jury might determine as the *most* conspicuous, would reasonably deprive him of his common law defenses. Plaintiff's instruction B, given, told the jury, in substance, that unless they believed the notices were open to view and unobstructed, and could have been naturally seen by plaintiff and her fellow employees there engaged in the same line of work, and in going to and from their work, then she was not deprived of her right to sue by reason of the Workmen's Compensation Act. The Act does not require that the notices shall be so posted that an employee may naturally see them without obstruction while at work, and in going to and from work. The construction placed on the requirement of notice by this instruction is clearly wrong, and may have led the jury to believe that notices should be posted wherever an employee was stationed, so he could see it plainly and clearly, as well as at the place of entrance and exit. The converse of this instruction was refused (defendant's No. 8) and which should have been given, had the latter part been modified, which part told the jury that the posting of notices at two or more conspicuous places were sufficient whether plaintiff saw or had occasion to see them. That part is wrong, for as before pointed out, one or more notices posted in a part of a large plant in conspicuous places in that part, may not even be constructive notice to employees who never worked in, or went to that part.

For the error in giving plaintiff's instruction B, the judgment will be reversed, verdict set aside, and a new trial awarded.

*Reversed; verdict set aside; new trial.*